UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

James Robert Carlson,                              Civ. No. 13-1831 (MJD/LIB)

        Plaintiff,

v.                                                  **REPORT AND RECOMMENDATION**

City of Duluth, Minnesota,

        Defendant,

This matter came before the undersigned United States Magistrate Judge upon Plaintiff's Motion for Preliminary Injunction. The motion was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. Under an expedited schedule, the Court held a hearing on Plaintiff's motion on July 12, 2013. For the reasons discussed below, the Court now recommends that Plaintiff's motion be **DENIED**.

## I.      BACKGROUND

James Robert Carlson (Plaintiff) is "the [self-described] president and sole shareholder of L.P.O.E., Inc., which operates a retail store known as 'Last Place on Earth,' located at 120 E. Superior St., in the City of Duluth, State of Minnesota." (Compl. [Docket No. 1] ¶ 2). Plaintiff alleges that the "City of Duluth, Minnesota [Defendant] is a municipal corporation organized under the laws of the State of Minnesota." (Id. ¶ 3). Plaintiff's store "has engaged in the sale of a wide variety of merchandise, including tobacco products and accessories, T-shirts and other clothing items, novelties, and adult DVDs." (Id. ¶ 5). The store also sells "various varieties of incense." (Id. ¶ 6).

1

Plaintiff filed the present action against Defendant on July 9, 2013, challenging the recently enacted City of Duluth Ordinance No. 10231 ("the City Ordinance"), (see Docket No. 1, Ex. 2), as facially unconstitutional because it requires him to "commit an act of self-incrimination" in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. (See Compl. ¶ 22). Plaintiff alleges that by the mere act of "applying for a license, [he] would have to admit to committing a violation of" various federal statutes. (Id.)

On July 9, 2013, in addition to the filing of the Complaint, Plaintiff filed the Motion for Preliminary Injunction presently before the Court. (See Docket No. 4). On July 10, 2013, the Honorable Michael J. Davis issued an order referring the motion to the undersigned and setting the motion for a hearing on July 12, 2013. (See Order [Docket No. 7]). On July 11, 2013, Defendant filed its memorandum in opposition to the motion and numerous accompanying exhibits. (See Docket Nos. 12-23).

## A. THE CITY ORDINANCE AT ISSUE

The City Ordinance that Plaintiff challenges provides that "[n]o person shall engage in the business of operating a synthetic drug establishment either exclusively or in connection with any other business enterprise without first obtaining a license for each synthetic drug establishment." Duluth, Minn., Ordinance 10231 § 5-45 (June 10, 2013); (Docket No. 1, Ex. 2 at 2). A "synthetic drug establishment" is "any business establishment where any person engages in the sale of synthetic drugs." Id. § 5-44(b). A "synthetic drug" is defined as one or more of the following:

(1) A substance that a reasonable person would believe is a synthetic drug;
(2) A substance that a reasonable person would believe is being purchased or sold as a synthetic drug; or

(3) A substance that a person knows or should have known was intended to be consumed by injection, inhalation, ingestion, or any other immediate means, and consumption was intended to cause or simulate a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater

Id. § 5-44(a).

In applying for a license, an applicant is required to disclose only the following information:

(a) A description of the business;
(b) A description of the location of the premises to be licensed;
([c]) The full names and addresses of the property owner, business owner, lessee and manager, operator and the date of birth of each;
(d) If applicant is a partnership, the names and residence addresses of each of the partners including limited partners, and the address of the partnership itself, if different from the address of the synthetic drug establishment; and
([e]) Whether any of the aforementioned individuals have ever been convicted of any crime or offense other than a traffic offense, and if so, a description of the offense as to time, place, date and disposition.

Id. § 5-46. However, "[i]f the chief of police or the chief administrative officer finds that they do not have adequate information to evaluate the license application, they may direct the applicant, manager or agent to appear at any reasonable time and place to give under oath information concerning the application." Id. § 5-47(b). Should the applicant refuse to "appear and cooperate with the investigation," no license shall be granted. Id.

The City Ordinance took effect on July 11, 2013—one day before the hearing on Plaintiff's motion and two days after Plaintiff filed his Complaint and Motion for Preliminary Injunction. Id. § 2.

## II. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION[1]

Because "[s]tanding is always a 'threshold question' in determining whether a federal court may hear a case," 281 Care Committee v. Arneson, 638 F.3d 621, 627 (8th Cir. 2011), before addressing the merits of Plaintiff's motion, the Court must first consider Defendant's arguments that the Court lacks subject matter jurisdiction to hear the matter and that the claims are not ripe for adjudication. (See Def.'s Mem. Opposing [Docket No. 12] at 1).

### A. STANDING

Defendant argues that Plaintiff will suffer no injury and has no standing to challenge the City Ordinance because he personally "is not required to apply for a license." (Id. at 8).

"Standing is the constitutional requirement, imposed by the 'cases or controversies' provision of Article III, that a plaintiff must allege a judicially cognizable and redressable injury in order to pursue a lawsuit." Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin Cnty., 115 F.3d 1372, 1378 (8th Cir. 1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992)).

> To establish standing, a plaintiff must demonstrate three minimal constitutional requirements: (1) an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that

---

[1] It was not entirely clear from Plaintiff's motion papers whether this motion was one for a preliminary injunction or temporary restraining order. (See Motion [Docket No. 4] at 1) (labeled as a one for "preliminary injunction and temporary restraining order" and requesting both). Regardless, because the standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction, there does not appear to be a material difference for purposes of this motion. Moreover, Defendant has noticed its appearance, submitted a written memorandum with numerous accompanying exhibits, and made oral argument in opposition to Plaintiff's motion at the hearing. Therefore, the Court construes the motion as one for a preliminary injunction. See C.S. McCrossan Const., Inc. v. Minnesota Dept. of Transp., No. 13-923 (RHK/JSM), 2013 WL 2278037, at *4 n.10 (D. Minn. May 6, 2013) (noting the applicable standards are the same and construing the movant's ambiguous motion as one for a preliminary injunction because the nonmovant had notice and the issues were fully briefed).

the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

Id.

Defendant argues that Plaintiff is actually attempting to assert a corporate interest on behalf of L.P.O.E., Inc. (Def.'s Mem. Opposing at 8-9). Defendant also conversely argues, however, that "[a]ttempting to amend the complaint to substitute L.P.O.E., Inc. for [Plaintiff] would be futile and will not eliminate the standing problem because this corporate entity does not currently exist." (Id. at 9). Essentially, although it does not dispute that Plaintiff is operating the Last Place On Earth store and selling certain products that may fall within purview of the City Ordinance, Defendant argues that neither Plaintiff nor L.P.O.E., Inc. itself may challenge the City Ordinance. In other words, according to Defendant, **nobody** has standing to challenge the City Ordinance, even on its face, despite the fact that the Last Place On Earth store is selling products that may fall within the purview of the City Ordinance. The Court does not find the argument persuasive.

First and foremost, at least for purposes of standing, Plaintiff essentially now appears to be what once was L.P.O.E., Inc. Defendant has argued, and provided the factual support, that L.P.O.E, Inc. has been administratively dissolved by the Minnesota Secretary of State. (Def.'s Mem. Opposing at 9); (Aff. of Allison Lutterman [Docket No. 13] at 3). Thus, because this corporation no longer exists under state law, Plaintiff appears to be, and Defendant has not argued to the contrary, now operating the Last Place On Earth store as a sole proprietorship under Minnesota law. The mere fact that the sole proprietorship carries a name different from Plaintiff's does not change its legal status. See General Cas. Co. of Wis. v. Outdoor Concepts, 667 N.W.2d 441, 445 (Minn. Ct. App. 2003) (explaining that "[a] sole proprietorship which is conducted under a trade name is not a separate legal entity"); Cummings v. Cummings, 376

N.W.2d 726, 728 (Minn. Ct. App. 1985) (noting that after the respondent dissolved the corporation, he converted it into a sole proprietorship with a trade name).  Simply put, Plaintiff here is not a mere shareholder of a corporation attempting to assert rights on behalf of the corporation—he is the legal entity selling the substances.  See, e.g., West Bend Mut. Ins. Co. v. Allstate Ins. Co., 776 N.W.2d 693, 706 (Minn. 2009) ("[U]nlike a sole proprietorship, a corporation is a separate legal entity from its owners and shareholders."); Mason v. Sailormen Inc., 2012 WL 1957413, at *3 (E.D. Mo. May 31, 2012) (explaining that "a sole proprietorship is not a separate legal entity from its owner" and that "when a state's law does not consider a sole proprietorship to be a separate legal entity, a suit involving a sole proprietorship must name the owner as the party plaintiff or defendant, and not the sole proprietorship itself"); Kenville v. United States, 1997 WL 1037853, at *4 (D. N.D. Nov. 6, 1997) ("[S]ole proprietorships are not considered separate legal entities from the owner"); see also People v. Kershner, 684 N.E.2d 1049, 1050 (Ill. App. Ct. 1997) (explaining that "due to the involuntary dissolution of Unlimited Automotive, defendant no longer was employed by a corporation but, rather, was engaged in a sole proprietorship").[2]

Even if the Last Place On Earth store, rather than Plaintiff himself, was to now apply for the license, it would be Plaintiff who would complete the application and provide the necessary information in the application.  Therefore, even if the City Ordinance pertained only to the "synthetic drug establishment," which the Court does not believe to be true as explained below, Plaintiff appears to be the sole owner of the Last Place On Earth store and has standing to

<hr/>

[2] While the "party invoking jurisdiction has the burden of establishing that he has the right to assert his claim in federal court," 281 Care Comm. v. Arneson, 638 F.3d 621, 627 (8th Cir. 2011), Plaintiff's allegations in the Complaint that he was the president and sole shareholder of L.P.O.E., Inc. at the time it existed, and the record introduced by Defendant that the corporation no longer exists, absent any evidence to suggest that the Last Place On Earth store is operating as anything other than a sole proprietorship convince the Court that Plaintiff has demonstrated his burden.

challenge the City Ordinance.  See Kopff v. Roth, 2007 WL 1748918, at *1 n. 3 (D. D.C. Jun. 15, 2007) (concluding that because the "the District of Columbia makes no legal distinction between the identity of a sole proprietorship and its owner," the individual owner had standing to assert a Telephone Consumer Protection Act claim); Geneva College v. Sebelius, 2013 WL 838238, at *20 (W.D. Pa. Mar. 6, 2013) (explaining that "there [was] no legal separation between [the sole proprietorship] and its owner," that the sole proprietorship's "claims are actually [the owner's] claims," and the owner could "assert in his own name the claims asserted by [the sole proprietorship]" (citing 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 23 (2012)).

Second, even if Plaintiff is considered to not be operating the Last Place On Earth store as a sole proprietorship, Plaintiff himself—not on behalf of a third-party—demonstrates the three minimal constitutional requirements to demonstrate standing.  Even assuming that the City Ordinance requires a business entity to apply and provide the required information instead of Plaintiff, the City Ordinance's prohibition, in part, is against anyone "engag[ing] in the business of operating a synthetic drug establishment . . . without first obtaining a license . . . ."  Duluth, Minn., Ordinance 10231 § 5-45 (June 10, 2013).  Because this prohibition is not targeted against the business itself, but rather the person principally operating the business, the penalty for a violation of the prohibited conduct appears that it could be directed toward Plaintiff—not the business—for operating a synthetic drug establishment without a license.  A civil penalty for a violation of the City Ordinance is both concrete and particularized.  See Arizona Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1006-07 (9th Cir. 2003) (holding that the plaintiff had standing to challenge a statute because the state had given no indication that the law would not be enforced and the plaintiff "faced a reasonable risk that it would be subject to civil

penalties for violation of the statute"); <u>Ostergren v. McDonnell</u>, 2008 WL 3895593, at *4-5

(E.D. Va. Aug. 22, 2008) (explaining that the court could find no decision holding that "no

injury-in-fact can be alleged in a pre-enforcement challenge to a statute that imposes only civil

penalties" and holding that the threat of civil penalties was enough to confer standing for

plaintiff to challenge the statute). While it does not appear on the present record that Plaintiff

has as yet been assessed any fine, at the hearing, Plaintiff represented that he has stopped

selling—or the Last Place On Earth store has stopped selling and he has stopped operating a

business that could be considered a synthetic drug establishment under the City Ordinance—

specifically because of the enactment of the City Ordinance. Given the concerns and statements

of purpose articulated by Defendant in the City Ordinance Duluth, Minn., Ordinance 10231 § 5-

43 (June 10, 2013), and the notoriety Plaintiff's business has carried within the local community

in recent history, (<u>see</u> Docket No. 14, Ex. 1) (providing copies of some of the news articles

discussing Plaintiff's business), there is no reason to believe that the threat of penalty is

hypothetical, nor can Plaintiff be faulted for choosing to comply with the City Ordinance.

<u>Bayless</u>, 320 F.3d at 1007 ("[I]t would turn respect for the law on its head for us to conclude that

[the plaintiff] lacks standing to challenge the provision merely because [he] chose to comply

with the statute and challenge its constitutionality, rather than to violate the law and await an

enforcement action."); <u>see also</u> <u>Berry v. City of Little Rock</u>, 904 F. Supp. 940, 945-46 (E.D. Ark.

1995) (finding that plaintiff owners of a property had standing to challenge an ordinance because

they suffered financial injuries that "personally affect[ed] [them]"). Similarly, there can be no

doubt that there exists a causal connection between Plaintiff's conduct (to stop selling synthetic

drugs or operating a sole proprietory business selling synthetic drugs) and the City Ordinance

prohibiting any individual from doing so without a license. Finally, a decision from this Court

staying the requirement of a license for operating such a business would redress Plaintiff's alleged injury.

Defendant cites <u>Potthoff v. Morin</u>, 245 F.3d 710, 716 (8th Cir. 2001) and <u>Brictson v. Woodrough</u>, 164 F.2d 107, 109 (8th Cir. 1947) for the proposition that Plaintiff has no standing because L.P.O.E., Inc. must assert its own interests. (<u>See</u> Def.'s Mem. Opposing at 7-8).[3] Both of these cases, however, are inapposite because, as already discussed above and agreed by Defendant, L.P.O.E., Inc. no longer exists under Minnesota law as a corporate entity, and because Plaintiff is not now a shareholder attempting to assert a claim on behalf of a corporation for an injury suffered by the corporation or assert some distant and speculative potential economic harm as a result of harm to the corporation. However, Defendant has presented no authority holding that an individual shareholder has no standing to challenge a statute where the statute directly imposes a penalty upon the shareholder themselves for a violation of the statute. Indeed, even <u>Potthoff</u> acknowledged that such an action would be proper. <u>See</u> 245 F.3d at 717 ("Potthoff's § 1983 claim can survive only if he has alleged that he personally has suffered a direct, nonderivative injury.").

Therefore, the Court finds that Plaintiff himself has standing to challenge the City Ordinance.

---

[3] <u>See</u> <u>Brictson</u>, 164 F.2d at 109 ("Actions to enforce corporate rights or redress injuries to the corporation cannot be maintained by a stockholder in his own name. This is true, even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock."); <u>Potthoff</u>, 245 F.3d at 716-17 (citing the <u>Brictson</u> "shareholder standing rule" and explaining that it "applies to civil rights actions brought pursuant to 42 U.S.C. § 1983 by shareholders claiming injury **to their corporations**," even where the corporation has one sole shareholder and principal employee (emphasis added)).

## B. RIPENESS

Defendant argues that "[t]he claim is not ripe for adjudication because no application for a license has been applied for and no criminal action based upon that application has been initiated." (Def.'s Mem. Opposing at 1).

While Plaintiff's Complaint alleged that the City Ordinance was unconstitutional on its face and as-applied, (see Compl. ¶ 22), it was not clear to the Court whether Plaintiff asserted both these claims in his motion for a preliminary injunction. Thus, at the hearing, the Court inquired whether Plaintiff's motion was based on a facial attack or an as-applied attack. Plaintiff's response to questions by the Court, which were consistent with the limited argument made in his written memorandum, clarified for the Court that at this time this was a facial attack on portions of the language of the City Ordinance itself.[4]

---

[4] To the extent that Plaintiff may yet seek to assert an as-applied challenge, the Court agrees with Defendant, (see Def.'s Mem. Opposing at 10), that such a challenge is not at present "ripe." "An as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010); MONY Life Ins. Co. v. Ericson, 533 F. Supp. 2d 921, 928 n. 9 (D. Minn. 2008).

"The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." Pub. Water Supply Dist. No. 8 v. City of Kearney, 401 F.3d 930, 932 (8th Cir. 2005). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

At the hearing, Plaintiff represented that he had not yet applied for a license under the City Ordinance, which went into effect only the day before the hearing on Plaintiff's motion. He argued that the mere act of applying for a license at some as yet unspecified future date would require him to provide self-incriminating information. To the extent that Plaintiff argues that the City Ordinance on its face requires any applicant to provide self-incriminating information, without regard to the potential issue that the City may call the applicant for an under-oath interview to provide further information, such an attack is a facial attack and is addressed below. To the extent that Plaintiff argues that the City Ordinance is unconstitutional, as applied to him, based on the potential that the City may at some future point require him, if he were to apply for a license, to provide information in a subsequent interview that may constitute self-incriminating information, such a claim is not ripe. Plaintiff has failed to demonstrate beyond conjecture on what may happen if he chooses to apply for a license, whether he would be required to provide under-oath information beyond the requirements in the application forms, what questions he may be asked in such an interview, whether anyone might seek to use such statements against him, and how the law might apply to such a situation is anything other than a hypothetical based on contingent future events. See, e.g., Doe v. Miller, 405 F.3d 700, 717-18 (8th Cir. 2005) (holding that even if the plaintiffs had challenged the sex offender registration statute, it was not yet "appropriate to consider [] questions as whether the registration requirement as applied falls under the rule of cases such as Marchetti and Albertson . . . .").

Defendant briefly, and vaguely, argued that Plaintiff "lacks standing to assert a facial challenge," aside from the standing issue already discussed above, because he failed to "provide factual support or legal argument for his facial challenge."  (Id. at 9-10).  This is not an attack based on standing, but rather, an argument that Plaintiff has failed to support the claim he has advanced.  However, even if Defendant argues that Plaintiff has no standing to challenge the City Ordinance on its face because he has not yet applied for a license, such an argument would fail.  See Advantage Media, L.L.C. v. City of Hopkins, 379 F. Supp.2d 1030, 1038 (D. Minn. 2005) (quoting the United States Supreme Court and explaining that "one who is subject to the law may challenge it facially without the necessity of first applying for and being denied, a license"); Minnesota Pub. Interest Research Grp. v. Selective Serv. Sys., 557 F. Supp. 925, 929 (D. Minn. 1983) ("[S]ince plaintiffs attack this statute as unconstitutional on its face, this court will be in no better position to assess the statute's validity once it has been actually applied to individuals or even once regulations to implement that application have been promulgated.").

"A plaintiff may challenge a statute or an ordinance on its face if (1) the law is unconstitutional in every conceivable application, or (2) the law is unconstitutionally overbroad because it seeks to prohibit such a broad range of protected conduct."  Advantage Media, L.L.C. v. City of Hopkins, 408 F. Supp. 2d 780, 789 (D. Minn. Jan. 5, 2006).  "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case."  United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010); MONY Life Ins. Co. v. Ericson, 533 F. Supp. 2d 921, 928 n. 9 (D. Minn. 2008).  Here, Plaintiff has not argued that the City Ordinance is overbroad, but appears to merely argue that the City Ordinance

---

The Court's conclusion that the as-applied challenge is not yet ripe does not prevent the Court from here considering the facial challenge.  See Alexander v. Thornburgh, 713 F. Supp. 1278, 1286 (D. Minn. 1989) ("[W]hile the question of the facial validity of a statute may be ripe for adjudication, the question of the constitutionality of the statute as applied may not be ripe.").

is unconstitutional on its face because it requires any individual applying for such a license to provide self-incriminating information, in violation of the Fifth Amendment to the United States Constitution. The Court now considers only this limited issue.[5]

## C. MERITS OF PLAINTIFF'S MOTION

When considering a motion for a preliminary injunction, the Court considers the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc); Tom T., Inc. v. City of Eveleth, No. 03-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003). At the heart of the analysis is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113. The Court has broad discretion in determining whether a preliminary injunction should be issued. Caballo Coal Co. v. Indiana Michigan Power Co., 305 F.3d 796, 800 (8th Cir. 2002). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

While the Court will generally consider all four factors, Tom T., Inc., 2003 WL 1610779, at *3, the Eighth Circuit has "repeatedly emphasized the importance of a showing of irreparable

---

[5] The Court also notes, and Plaintiff acknowledged at the hearing, that the only portions of the City Ordinance he believed were violative of his Fifth Amendment rights—which is the only bases Plaintiff has asserted to challenge the City Ordinance—were the definition of a synthetic drug requiring the application for a license and the potential interview for further information that the City may require before granting the license. See Duluth, Minn., Ordinance 10231 §§ 5-44, 5-46, 5-47. Plaintiff has not challenged any of the prohibitions provided for by the City Ordinance in § 5-48. Thus, even if the Court were to find that the application requirements for a license violate Plaintiff's Fifth Amendment rights, he has not demonstrated a basis to stay the remaining portions of the City Ordinance. See Nightclub Mgmt., Ltd. v. City of Cannon Falls, 95 F. Supp. 2d 1027, 1037-38 (D. Minn. 2000) (explaining that, under Minnesota law, generally, "[i]f any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid . . ." (citing Minn. Stat. § 645.20)).

harm." <u>Caballo Coal Co.</u>, 305 F.3d at 800. Indeed, the failure to show irreparable harm suffices

to deny the motion. <u>Watkins</u>, 346 F.3d at 844 ("Failure to show irreparable harm is an

independently sufficient ground upon which to deny a preliminary injunction."); <u>Disc & Tape,

Inc. v. City of Moorhead, Minn.</u>, No. 12-171 (MJD/LIB), 2012 WL 591668, at *3 (D. Minn. Feb.

22, 2012) ("To obtain preliminary injunctive relief, Plaintiff[] must show a likelihood of

irreparable harm in the absence of the injunction."); <u>Taxpayers' Choice Volunteer Comm. v.

Roseau Cnty. Bd. of Comm'rs</u>, 903 F. Supp. 1301, 1308 (D. Minn. 1995) ("Although no single

factor is dispositive with respect to a preliminary injunction, failure to demonstrate immediate

and irreparable harm is adequate grounds to deny the motion."). Additionally, "establishing a

risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of

immediate irreparable injury.'" <u>Taxpayers' Choice</u>, 903 F. Supp. at 1308 (quoting <u>ECRI v.

McGraw-Hill, Inc.</u>, 809 F.2d 223, 225 (3d Cir. 1987)). "'[P]ossible or speculative harm is not

enough' to justify a preliminary injunction." <u>Id.</u> (quoting <u>Bloom v. O'Brien</u>, 841 F. Supp. 277,

279 (D. Minn. 1993)). Moreover, where the "likelihood of success by Plaintiff[] is not so

convincingly strong as to outweigh the absence of irreparable harm or the other <u>Dataphase</u>

factors," the Court "need not indulge in a detailed discussion of Plaintiff['s] likelihood of

success." <u>Caballo Coal Co.</u>, 305 F.3d at 802. Therefore, the Court first considers whether

Plaintiff is threatened with immediate irreparable harm.

### 1) Threat of Immediate Irreparable Harm

The only irreparable harm Plaintiff argues he will suffer if the Court denies his motion is

that he will be required to self-incriminate himself in violation of the Fifth Amendment. (<u>See</u>

Mem. of Points and Authorities in Supp. [Docket No. 5] at 13). While it may be true that self-

incrimination, in and of itself, constitutes irreparable harm, here, if the Court denies the motion for a preliminary injunction, Plaintiff will not suffer irreparable harm.

First, even if Plaintiff continues to sell "synthetic drugs"[6] without obtaining a license under the City Ordinance, he will not be subject to irreparable harm. Indeed, Defendant acknowledged at the hearing that the ordinance cannot subject Plaintiff to any criminal penalties whatsoever;[7] the most severe consequence of violating the ordinance might be a civil penalty in an amount which has yet to even be determined.[8] Further, Defendant conceded at the hearing that Defendant's business cannot be closed or required to "shut its doors" under the City Ordinance at issue. In other words, Plaintiff can entirely maintain the status quo as before the enactment of the City Ordinance, with the exception that the City could penalize him with an as yet undetermined monetary civil fine. It is well-established that where a party will only suffer potential monetary loss, and money damages are calculable, there is an adequate remedy at law and no irreparable harm exists. See Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986) ("[E]conomic loss does not, in and of itself, constitute irreparable harm"); Disc & Tape, Inc., 2012 WL 591668, at *6; Allied Sales Drivers & Warehousemen, Local No. 289 v. Sara Lee Baker Grp., No. 10-4975 (MJD/LIB), 2011 WL 31733, at *4 (D. Minn. Jan. 5, 2011); Benefit

---

[6] Unless otherwise noted, any reference to "synthetic drug" within this Report and Recommendation specifically means and refers to the definition of "synthetic drug," as defined in the City Ordinance.

[7] In his written memorandum, Plaintiff argued that "[f]ailure of Plaintiff to obtain a license would subject him to daily criminal fines" but offered no support for this assertion. The Court has found no provision within the City Ordinance subjecting Plaintiff or anyone else to **criminal** penalties for "engag[ing] in the business of operating a synthetic drug establishment . . . without first obtaining a license." And as noted above, both at the hearing and in its written memorandum, Defendant agreed that no criminal penalties can be imposed from the City Ordinance. (See Def.'s Mem. Opposing [Docket No. 12] at 12-13) ("The city code does not provide for criminal penalties.").

[8] The ordinance itself provides no penalty for a violation. Rather, under the City Code, "where no specific penalty is provided [under an ordinance], the violation of any such . . . ordinance of the city shall be punished by a fine not to exceed an amount which shall be set in accordance with Section 31-8 of this Code." Duluth, Minn., Code, § 1-7, available at http://library municode.com/index.aspx?clientId=50009 (last visited July 14, 2013). The amount of the fine, which is to be set by city council resolution, appears to not yet have been set. See Duluth, Minn., Code, § 31-8, available at http://library municode.com/index.aspx?clientId=50009 (last visited July 14, 2013). In its written memorandum, Defendant noted that "[a] violation of the city code results in only the imposition of a fine that cannot exceed $1,000.00." (Def.'s Mem. Opposing [Docket No. 12] at 13).

Resource, Inc. v. Apprize Tech. Solutions, Inc., No. 07-4199 (JNE/FLN), 2008 WL 2080977, at *11 (D. Minn. May 15, 2008) ("[H]arm is not irreparable if money damages are adequate compensation"); Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) ("Irreparable harm 'means injury for which a monetary award cannot be adequate compensation.'" (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Similarly, the mere imposition of some potential, yet undefined, civil monetary fine—without any demonstrated potential to cause such significant hardship such as to require closure of one's business—does not, in and of itself, constitute irreparable harm. See National Propane Gas Ass'n v. United States Dept. of Homeland Sec., 534 F. Supp.2d 16, 19 (D. D.C. 2008) (holding that even if the plaintiff could show likelihood of success on its constitutional challenge of rules and regulations promulgated by the defendant, it had "failed to show—or even argue, for that matter—that it would suffer irreparable harm should the [rules and regulations] be implemented and enforced as scheduled" because "[a]lthough civil penalties could certainly qualify as harmful to [the plaintiff], [courts have] made clear that 'mere injuries, however substantial, in terms of money . . . are not enough' to constitute irreparable harm"); Hellbender, Inc. v. Town of Boone, 2013 WL 1349286, at *1 n. 2 (W.D. N.C. Mar. 31, 2013) (holding that "the potential imposition of civil penalties against Plaintiffs in the event of a noise ordinance violation did not amount to an irreparable harm"); Young v. Heineman, 2012 WL 1079126, at *8 (D. Neb. Mar. 30, 2012) (holding that no "irreparable harm will befall the plaintiff," even though she faced a potential $1,000 civil fine per day for violating a cease and desist order based on recent amendments to the Nebraska Real Estate License Act ).

Therefore, on the present record now before the Court, the Plaintiff can continue to operate his business without applying for a license under the City Ordinance without suffering

immediate irreparable harm.  While the assessment of some as yet undetermined, potential civil monetary fine could serve as a burden on Plaintiff, all such fines would be easily calculable damages that he would be entitled to recover (if paid) or to be dismissed (if not paid) should he prevail in his underlying claim that the City Ordinance is unconstitutional.  Additionally, the Court notes that Plaintiff has not demonstrated, as is his burden, that any potential civil monetary fine that may be assessed against him for selling synthetic drugs without a license would be so cost prohibitive that he, in effect, would be required to close down his business.

In short, while forced self-incrimination may constitute an irreparable harm necessary to merit issuing a preliminary injunction for the stay of a statute or ordinance, in the present case, nothing in the City Ordinance, at this time, requires Plaintiff to take actions that would require or compel him to suffer an irreparable harm.[9]

Second, for the reasons discussed below in addressing Plaintiff's likelihood of success on the merits, on the record before the Court at the present time, the Court does not believe that the City Ordinance, on its face, requires any applicant to make any compelled self-incriminating statements by the mere application for a license.

Therefore, the Court finds that Plaintiff has not met his burden of demonstrating a threat of immediate irreparable harm, and that, on the record now before the Court, this factor weighs heavily in favor of denying Plaintiff's motion for a preliminary injunction.

---

[9] The Court also notes that the plain language of the City Ordinance itself does not compel Plaintiff to take any action.  The City Ordinance simply states that anyone wishing to sell "synthetic drugs," as defined in the City Ordinance, first obtain a license.  Plaintiff has not been called to testify or provide any information in any hearing, nor has he been charged with any criminal charges under the City Ordinance.  Nor is the question before the Court whether the United States Government or State may use evidence of his application, should he make one, in any pending or future prosecution.  Moreover, as already noted above, under the ordinance at issue, even if Plaintiff continues to operate his business without applying for the license, he will not be compelled to self-incriminate himself, and the potential civil fine that might result is itself not an immediate irreparable harm.  Thus, at this time, unlike the cited authority upon which Plaintiff relies in his written memorandum, more fully discussed below, Plaintiff has not been compelled under law to provide any incriminating statements in mandated testimony, nor has he been charged with criminal prosecution for failing to do so.

### 2) Likelihood of Success on the Merits[10]

In <u>Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds</u>, 530 F.3d 724, 730 (8th Cir. 2008) (en banc), the Eighth Circuit explained that "the 'fair chance' standard should not be applied to motions to preliminarily enjoin the enforcement of a state statute," rather the movant must make "a more rigorous threshold showing that [he] is likely to prevail on the merits." The Court reasoned that the "more rigorous standard 'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" <u>Rounds</u>, 530 F.3d at 732 (quoting <u>Able v. United States</u>, 44 F.3d 128, 131 (1995)). The same standard applies when a plaintiff is challenging a city ordinance. <u>See</u> <u>Disc & Tape, Inc.</u>, 2012 WL 591668, at *3; <u>Bergmann v. City of Lake Elmo</u>, No. 10-2074 (JNE/FLN), 2010 WL 4123355, at *5 (D. Minn. Aug. 19, 2010) (applying the same standard to a city ordinance).[11]

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." This constitutional privilege, as applied through the Fourteenth Amendment, also protects individuals from action by the States. <u>See</u> <u>Malloy v. Hogan</u>, 378 U.S. 1, 6 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States."); <u>Lefkowitz v. Turley</u>, 414 U.S. 70, 73-74 (1973). The United States Supreme Court has explained that the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a

---

[10] "It is important to note that in this instance, as in any preliminary injunction analysis, the court does not predetermine the merits of the case." <u>Caballo Coal Co. v. Indiana Michigan Power Co.</u>, 305 F.3d 796, 802 (8th Cir. 2002).

[11] The Court also notes that Plaintiff cites to <u>Rounds</u> in his written memorandum and appears to acknowledge that it is the applicable standard for this factor. (<u>See</u> Mem. of Points and Authorities in Supp. [Docket No. 5] at 5).

criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz, 414 U.S. at 77 (striking down a New York statute requiring public contracts "to provide that if a contractor refuses to waive immunity or to answer questions when called to testify concerning his contracts with the State or any of its subdivisions, his existing contracts may be canceled and he shall be disqualified from further transactions with the State for five years"). Moreover, the privilege not only "extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v. United States, 341 U.S. 479, 486 (1951). This protection, however, is "confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." Id.

Plaintiff argues that the mere act of applying for the license under the City Ordinance would be an act of self-incrimination because "the definition of 'synthetic drug' contained in the ordinance' . . . falls squarely within the definition of the criminally prohibited controlled substance analogue, as set forth in Title 21 U.S.C. [§ 802(32)]." (Mem. of Points and Authorities in Supp. at 11). Plaintiff misreads the City Ordinance.

The City Ordinance definition of synthetic drug is much broader than the definition of a "controlled substance analogue," as defined in 21 U.S.C. § 802(32)(A). Under the statute, a "controlled substance analogue is a substance":

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant,

depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). Or, as explained by the Eighth Circuit, "[u]nder [21 U.S.C. § 802(32)(A)], a drug becomes a controlled substance if it has a chemical structure substantially similar to that of a controlled substance, and either has a substantially similar effect on the user's central nervous system, or a relevant someone represents that it has or intends it to have such an effect." United States v. McKinney, 79 F.3d 105, 107-08 (8th Cir. 1996), vacated on other grounds, 520 U.S. 1226 (1997).

While one of the definitions of synthetic drug under the City Ordinance, in part, includes some of the language from the controlled substance analogue definition in 21 U.S.C. § 802(32)(A), it does not include the full definition—the City Ordinance definition does not require that the chemical structure be similar. Duluth, Minn., Ordinance 10231 § 5-44(a)(3) (June 10, 2013); (Docket No. 1, Ex. 2 at 2). Simply put, even the third definition of synthetic drug under the City Ordinance alone is broader than the controlled substance analogue definition in 21 U.S.C. § 802(32)(A). However, also taking into account the other two definitions of synthetic drug within the City Ordinance, and the fact that the City Ordinance includes an "or" rather than "and" in listing the multiple definitions, it is evident on its face that the City Ordinance definition of synthetic drug is far more broad than the definition of a controlled substance analogue under 21 U.S.C. § 802(32)(A). Additionally, the City Ordinance has no requirement that an applicant identify which product they sell they think might fall within the City Ordinance or which definition they are applying under. Thus, contrary to Plaintiff's

argument, by merely applying for a license to sell a synthetic drug, which could meet any one of the three definitions under the City Ordinance, without being required to identify which definition the applicant is applying under or even what specific product they sell that may fall within one of the definitions of synthetic drugs, an applicant is in no way "admitting that he intend[s] to sell a substance that falls squarely within the definition of the criminally prohibited controlled substance analogue, as set forth in Title 21 U.S.C. [§ 802(32)(A)]." (Mem. of Points and Authorities in Supp. at 11).

In a footnote, without any citation to authority or much discussion, Plaintiff appears to acknowledge that the City Ordinance definition of synthetic drug is much broader than the definition of a controlled substance analogue under § 802(32)(A). (Mem. of Points and Authorities in Supp. at 11 n.2). He argues, however, that "the admission that the Plaintiff intends to sell a substance that contains at least part of the definition of 'controlled substance analogue' clearly provides a link in the chain of evidence necessary for Plaintiff's criminal conviction." (Id.) Plaintiff again misreads the City Ordinance. The City Ordinance, on its face, makes no requirement for an applicant to identify any specific product being sold nor specify under which of the three definitions provided in the City Ordinance an applicant believes his or her intended product of sale might fall under. Therefore, because an applicant is not required to identify whether he or she intends to sell any products falling within the third definition of synthetic drug, which is the only definition in the City Ordinance that has any language even partially similar to the definition of a controlled substance analogue as defined in 21 U.S.C. § 802(32)(A), an applicant is not required to admit by the mere act of submitting a license application that they are intending to sell any products that fall within the definition of a controlled substance analogue as defined in 21 U.S.C. § 802(32)(A).

Given the breadth of the definition of synthetic drug within the City Ordinance, there could be numerous lawful reasons why an individual may seek to apply for a license under the City Ordinance, and because nothing on the face of the City Ordinance requires an applicant to identify either the specific product they wish to sell or the definition of synthetic drug under which they are applying such that it could be determined if that substance is legal or illegal under some other law, the City Ordinance does not appear, on its face, to require compelled self-incrimination. See Haynes v. United States, 390 U.S. 85, 99 (1968) (holding that "a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm under § 5841 or for possession of an unregistered firearm under § 5841," but explaining that because "there are a number of apparently uncommon circumstances in which registration is required of one who has not violated the Firearms Act, . . . the existence of such situations makes it inappropriate, in the absence of evidence that the exercise of protected rights would otherwise be hampered, to declare these sections impermissible on their face").

Plaintiff's only other argument for why the mere act of applying for a license under the City Ordinance, on its face, requires an act of compelled self-incrimination is because the act of submitting the application is "an admission of guilt under the Food and Drug Act 'misbranding' charges that Plaintiff now faces in his Federal Indictment." (Mem. of Points and Authorities in Supp. at 11). The Court is well aware of the criminal charges currently pending against Plaintiff, which are presently under advisement in another case before the undersigned. (See 12-cr-305 (DSD/LIB)). But as already discussed above, the only "ripe" challenge to the City Ordinance is a facial challenge, not an as-applied challenge specific to Plaintiff. On its face, the City Ordinance requires no compelled self-incrimination of misbranding because it does not require

that an applicant disclose which items he or she is selling as synthetic drugs or why he or she is

seeking a synthetic drug license.  As explained above, whether potential questions asked during a

subsequent, under-oath interview, pursuant to § 5-47 of the City Ordinance, or whether an

application by someone selling **only** items labeled as not synthetic drugs would present self-

incrimination issues are questions not subject to a facial attack and are not presently before the

Court.[12]

Therefore, for all of the reasons discussed above, the Court finds that Plaintiff has not

demonstrated his burden—on the limited issue and on the limited record now before the Court at

this stage in the proceeding—that he is likely to prevail on the merits with regard to a facial

attack on the City Ordinance.[13]

---

[12] The Court notes that Plaintiff has not cited to any facts in the record demonstrating that he only sells items labeled as not synthetic drugs, that he would be required to apply for a license under the City Ordinance in such a scenario, and that the mere application of a license under such circumstances would serve as self-incrimination.  See Doe v. Nebraska, 734 F. Supp. 2d 882, 899 (D. Neb. 2010) (explaining that the parties had "failed to produce a record that would allow [the Court] to determine how [the statute] would actually impact particular Plaintiffs or offenders more generally").

[13] Plaintiff relies on two lines of cases in his written memorandum, but aside from setting forth general principles of Fifth Amendment law, he fails to articulate how those cases are applicable to the narrow issue before the Court with respect to this specific ordinance.  Regardless, both lines of cases are inapposite.

The first line of cases Plaintiff cites, (see Mem. of Points and Authorities at 6-8), relates to cases analyzing legislation that on its face required individuals to waive their Fifth Amendment self-incrimination privilege.  See Lefkowitz v. Turley, 414 U.S. 70, 71 (1973) (finding unconstitutional a New York law requiring public contracts "to provide that if a contractor refuses to waive immunity or to answer questions when called to testify concerning his contracts with the State or any of its subdivisions, his existing contracts may be canceled and he shall be disqualified from further transactions with the State for five years"); Lefkowitz v. Cunningham, 431 U.S. 801, 803-804 (1977) (finding unconstitutional a New York law providing that "an officer of a political party may be subpoenaed by a grand jury or other authorized tribunal and required to testify concerning his conduct of the party office he occupies," and if he "refuses to answer any question, or if he declines to waive immunity from the use of his testimony against him in a later prosecution, the statute immediately terminates his party office and prohibits him from holding any other party or public office for a period of five years").

The second line of cases Plaintiff cites, even as articulated by Plaintiff, merely establish that "the Fifth Amendment privilege provide[s] a complete defense to a criminal prosecution," (see Mem. of Points and Authorities at 8-9), under various statutes requiring an individual to register or pay a tax on something that has been made illegal—not that such laws were unconstitutional on their face.  See Marchetti v. United States, 390 U.S. 39, 61 (1968) ("We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements."); Grosso v. United States, 390 U.S. 62, 70 n. 7 (1968) ("We do not hold today either that the excise tax is as such constitutionally impermissible, or that a proper claim of privilege extinguishes liability for taxation; we hold only that such a claim of privilege precludes a criminal

### 3) Public Interest and Balance of the Harms

While governmental interests must give way to an individual's constitutional guarantee against self-incrimination, see Lefkowitz v. Cunningham, 431 U.S. 801, 808 (1977) ("We have already rejected the notion that citizens may be forced to incriminate themselves because it serves a governmental need."); Lefkowitz, 414 U.S. at 78 ("[C]laims of overriding interests are not unusual in Fifth Amendment litigation and they have not fared well."), as already discussed above, the Plaintiff's guarantee against compelled self-incrimination simply is not at issue in this present motion. Additionally, because the Court has already concluded that Plaintiff has not been threatened with immediate irreparable harm and, on the record before the Court, has not met his burden of demonstrating that he is likely to prevail on the merits of his facial challenge to the City Ordinance, the Court need not more fully discuss or weigh the public interests advocated by Defendant in its voluminous exhibits, (see Aff. of Nathan N. LaCoursiere [Docket No. 15] and accompanying exhibits), against any of Plaintiff's interests beyond protection from self-incrimination.

---

conviction premised on failure to pay the tax."); Haynes v. United States, 390 U.S. 85, 90 (1968) (finding that "a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm under § 5841 or for possession of an unregistered firearm under § 5841" and explaining that the Court resolved "**only** the narrow issue of whether **enforcement** of § 5851 against petitioner, despite his assertion of the privilege against self-incrimination, is constitutionally permissible"); Leary v. United States, 395 U.S. 6, 29 (1969) ("We conclude that petitioner's invocation of the privilege was proper and that it should have provided a full defense to the third count of the indictment."); see also Doe, 405 F.3d at 717 (explaining that "the Court's holding [in Leary] that a plea of self-incrimination was a complete defense in a prosecution for non-compliance with provisions requiring payment of a tax on marijuana imported into the United States did not imply that state laws prohibiting the possession of marijuana were somehow unconstitutional"). Here, Plaintiff has not been criminally prosecuted under a provision of the City Ordinance—indeed, as conceded by Defendant, he cannot be.

### III.     CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that

Plaintiff's motion for a preliminary injunction [Docket No. 4] be **DENIED**.[14]


Dated: July 15, 2013                                          s/Leo I. Brisbois
                                                             LEO I. BRISBOIS
                                                             United States Magistrate Judge


### N O T I C E

Pursuant to Local Rule 72.2(b), and Court's July 10, 2013 Order [Docket No. 7], any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by 12:00 p.m. July 16, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections by **12:00 p.m. on July 17, 2013**.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.

---

[14] Because the Court recommends that the motion for a preliminary injunction be denied, it need not consider Plaintiff's argument regarding the issue of posting a security bond under Fed. R. Civ. P. 65(c).