UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Robert Carlson,

    Plaintiff,

v.                               **MEMORANDUM OPINION AND ORDER**
                                   Civil No. 13-1831 (MJD/LIB)

City of Duluth, a Minnesota
municipal corporation,

    Defendant.

_____

    Randall D.B. Tigue, Randall Tigue Law Office, P.A., and David J. Malban, Malban Law Office, Counsel for Plaintiff.

    M. Allison Lutterman, Deputy City Attorney and Nathan N. LaCoursiere, Assistant City Attorney, Counsel for Defendant.

_____

The above-entitled matter comes before the Court on Plaintiff's objections to the Report and Recommendation of Magistrate Judge Leo I. Brisbois dated July 15, 2013. Pursuant to statute, the Court has conducted a de novo review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.2(b).

**I.**    **Summary of Decision**

The City of Duluth recently enacted an ordinance that requires any person who engages in the business of operating a synthetic drug establishment, to first

obtain a license for such establishment. Plaintiff claims that this ordinance is unconstitutional because by applying for such a license, the applicant would be admitting to violations of federal criminal law. As applied to Plaintiff in particular, Plaintiff alleges that compliance with the ordinance would require him to admit to committing a violation of the federal statutes for which he now stands indicted.

Before the Court is Plaintiff's motion for an order enjoining enforcement the ordinance. However, to be entitled to such relief, Plaintiff must establish a likelihood of success on the merits of his claims and irreparable harm.

On the present record, the only claim that is ripe for adjudication is Plaintiff's facial challenge to the ordinance - that the mere act of applying for a license under the ordinance is self-incriminating. Plaintiff has failed to demonstrate a likelihood of success on the merits of this claim, because Plaintiff failed to demonstrate that under any and all circumstances, applying for a license under the ordinance would violate federal laws. Plaintiff has also failed to show irreparable harm if the injunction is not issued, as he would still be able to operate his business and would, at most, be subject to a civil fine if he was found to have violated the ordinance. Plaintiff's motion to enjoin enforcement of the

ordinance will therefore be denied.

## II.   Background

Plaintiff is the president and sole shareholder of L.P.O.E., Inc., which operates a retail store known as "Last Place on Earth" (hereinafter referred to as "LPOE").  (Complaint ¶ 2.)  LPOE is located at 120 E. Superior Street in Duluth, Minnesota.  (Id.)  LPOE sells a wide variety of merchandise, including tobacco products, T-shirts, novelties and adult DVD's.  (Id. ¶ 5.)  LPOE also sells a variety of incense products.  (Id. ¶ 6.)

Plaintiff has been indicted, and charged in a Superseding Indictment with distribution of misbranded drugs, distribution and possession of a controlled substance, and distribution of controlled substance analogues.  (Id. ¶¶ 7-9.) Plaintiff asserts that counts 1-17 of the Superseding Indictment allege, *inter alia*, that certain of the incense products sold at LPOE are, in fact, misbranded synthetic drugs, and that counts 21-29 charge Plaintiff with the actual sale of a controlled substance analogue.  (Id. ¶¶ 8 and 9.)

On or about June 11, 2013, the City of Duluth ("City") enacted Ordinance No. 10231, which requires any person, who engages in the business of operating a synthetic drug establishment, to first obtain a license for such establishment.

Sec. 5-45. The ordinance defines "synthetic drug establishment" as any business establishment where any person engages in the sale of synthetic drugs. Sec. 5-44(b).

It is Plaintiff's position that the definition of synthetic drug in the ordinance is "almost a complete copy of the definition of 'controlled substance analogue'" set forth in 21 U.S.C. § 802(32). (Id. ¶ 17.) Plaintiff alleges that failure to comply with this ordinance would subject him to a fine pursuant to Sections 1-7 and 31-8 of the Duluth City Code. (Id. ¶ 20.) The ordinance took effect on July 11, 2013.

In his Complaint, Plaintiff alleges that Ordinance No. 10231 is facially unconstitutional and unconstitutional as applied in that it compels Plaintiff to commit an act of self-incrimination in order to obtain a license, in that by applying for a license, Plaintiff would have to admit to committing a violation of the very federal statutes for which he now stands indicted, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (Id. ¶ 22.)

Plaintiff filed a motion for a preliminary injunction and temporary restraining order, to restrain enforcement of Ordinance No. 10231. The motion was thereafter referred to Magistrate Judge Leo Brisbois.

**III.    Standard**

To obtain preliminary injunctive relief, Plaintiff must show a likelihood of irreparable harm in the absence of the injunction.  <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008).  The Court also considers the balance between such harm and the injury that granting the injunction will inflict on other parties, Plaintiff's likelihood of success on the merits, and the public interest.  <u>Dataphase Sys., Inc. v. C L Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Because Plaintiff seeks to enjoin "government action based on presumptively reasoned democratic processes," Plaintiff must make a threshold showing that he is "likely to prevail on the merits."  <u>Planned Parenthood v. Rounds</u>, 530 F.3d 724, 732–733 (8th Cir. 2008) (en banc).

**IV.    Merits**

    **A.    Report and Recommendation**

Magistrate Judge Brisbois has recommended to this Court that Plaintiff's motion for preliminary injunctive relief be denied.  In making this recommendation, Magistrate Judge Brisbois first determined that Plaintiff had standing to raise a constitutional challenge to Ordinance No. 10231.  Magistrate Judge Brisbois further determined that Plaintiff's claim that Ordinance No. 10231,

5

as applied to Plaintiff, violates his rights under the Fifth and Fourteenth Amendments, was not yet ripe for adjudication, and clarified that the motion for preliminary injunctive relief was based solely on his claim that Ordinance No. 10231 was unconstitutional on its face.  No objections have been filed challenging the Magistrate Judge's determination as to standing and ripeness.  Accordingly, the Court will adopt those findings.

As to the merits of Plaintiff's motion, Magistrate Judge Brisbois determined that Ordinance No. 10231, on its face, did not compel a person applying for a license thereunder to incriminate himself in violation of the Fifth Amendment. Magistrate Judge Brisbois further held that Plaintiff had failed to demonstrate that he would suffer irreparable injury if the requested injunctive relief were not granted.  Plaintiff has objected only to the Magistrate Judge's determination that the ordinance is not facially unconstitutional and that Plaintiff will not suffer irreparable injury.

### B.     Likelihood of Success on the Merits

The Fifth Amendment provides that "No person . . . shall be compelled in any Criminal Case to be a witness against himself."  The right against self-incrimination "must be accorded liberal construction in favor of the right it was

intended to secure." Hoffman v. United States, 341 U.S. 479, 486 (1951). "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Id.   It is for the court to determine whether the privilege applies, and in making this determination, the court must consider the circumstances particular to the case and to the facts actually in evidence.  Id.

Plaintiff asserts that Ordinance No. 10231, on its face, violates the Fifth Amendment protection against self-incrimination, as the mere act of submitting an application stating that one intends to sell synthetic drugs is self-incriminatory.

To challenge an ordinance on its face, the plaintiff must show "that no set of circumstances exists under which [the ordinance] would be valid . . or 'that the statute lacks any 'plainly legitimate sweep.'"  Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 685 (8th Cir. 2012) (citations omitted).  "'Facial challenges are disfavored' because they "often rest on speculation . . . [and] raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'"  Id.  (quoting Wash. State Grange v. Wash. State Rep. Party

et al., 552 U.S. 442 (2008)).

Plaintiff's facial challenge is based on three arguments. First, he argues that the third definition of "synthetic drug" incorporates two-thirds of what is necessary to convict him under the controlled substances analogue statute. He next asserts that the act of applying for a license under Ordinance No. 10231 is self-incriminatory because it would necessarily remove him from one of the exemptions contained in the controlled substances analogue statute. Finally, he argues that the act of applying for a license would be a link in the chain of evidence necessary to convict Plaintiff under the misbranding counts of the indictment to which he is now charged, and is thus self-incriminatory.

Because the motion for preliminary injunctive relief is based solely on a facial challenge to Ordinance No. 10231, the Court need not address Plaintiff's third argument - that the act of applying for a license would be a link in the chain of evidence necessary to convict Plaintiff under the misbranding counts of the indictment to which he is now charged - as this argument goes to his claim that the ordinance "as applied" violates his constitutional rights. As discussed previously, the parties agree the "as-applied" claim is not yet ripe for adjudication.

As to the remaining arguments, Magistrate Judge Brisbois found that the definition of "synthetic drug" in the ordinance is much broader than the statutory definition of a controlled substance analogue set forth in 21 U.S.C. § 802(32)(A). As a result, and contrary to Plaintiff's assertions, Magistrate Judge Brisbois found that the mere act of applying for a license does not necessarily furnish a link in the chain of evidence needed to prosecute someone under federal criminal law. This Court agrees.

Ordinance No. 10231 defines "synthetic drug" as one or more of the following:

(1) A substance that a reasonable person would believe is a synthetic drug;
(2) A substance that a reasonable person would believe is being purchased or sold as a synthetic drug; or
(3) A substance that a person knows or should have known was intended to be consumed by injection, inhalation, ingestion, or any other immediate means, and consumption was intended to cause or simulate a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance on Schedule 1. Synthetic drug does not mean food and drug ingredients, alcohol, legend drugs, tobacco or dietary supplements.

A "controlled substance analogue" is defined by statute as:

(I) the chemical structure of which is substantially similar to the chemical

> structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). This statutory definition is to be read in the conjunctive; that is a substance is a controlled substance analogue "if it has a chemical structure substantially similar to that of a controlled substance, and either has a substantially similar effect on the user's central nervous system, or a relevant someone represents that it has or intends it to have such an effect." United States v. McKinney, 79 F.3d 105, 107-108 (8th Cir. 1996) vacated on other grounds 520 U.S. 1226 (1997); see also United States v. Turcotte, 405 F.3d 515 (7th Cir. 2005) (finding definition of "controlled substance analogue" must be read in the conjunctive, noting the vast majority of courts to address the issue have adopted the conjunctive reading). The controlled substance analogue statute thus applies only to those substances that have a chemical structure that is substantially

similar to the chemical structure of a schedule I or II controlled substance.

Ordinance No. 10231 does not include this requirement. Instead, it applies to any substance a person may reasonably believe is a synthetic drug, or to a substance a person may reasonably believe is being purchased or sold as a synthetic drug, without regard to the actual chemical structure of the substance. Under this broad definition, it does not necessarily follow that a business required to file a license under Ordinance No. 10231 is offering a synthetic drug that falls within the definition of controlled substance analogue as defined in 21 U.S.C. § 802(32)(A).

Plaintiff focuses his argument on the third definition of synthetic drug that is included in the ordinance, which encompasses a substance "that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." However, unlike the statutory definition of controlled substance analogue, the definition of synthetic drug included in the ordinance is to be read in the disjunctive, as set forth in the preamble - "The term synthetic drug means one or more of the following:".

Plaintiff next argues that applying for a license pursuant to the ordinance

would necessarily remove Plaintiff from one of the exemptions contained in 21 U.S.C. § 802(32)(C)(iv). This argument was not raised before Magistrate Judge Brisbois. Nonetheless, the Court finds that the exemption set forth in § 802(32)(C)(iv) has no application here.

Pursuant to § 802(32)(C), a controlled substance analogue does not include:

(I) a controlled substance; (ii) any substance for which there is an approved new drug application; (iii) with respect to a particular person any substance, if an exemption is in effect for investigational use, for that person, under section 355 of this title to the extent conduct with respect to such substance is pursuant to such exemption; or
(iv) any substance to the extent not intended for human consumption before such an exemption takes effect with respect to that substance.

Exemptions under § 355, as referenced in subsection (C)(iii) and (iv), refers to exemptions of drugs for research "by experts qualified by scientific training and experience to investigate the safety and effectiveness of drugs." 21 U.S.C. § 355(I).

Accordingly, because Plaintiff has not demonstrated that there are no circumstances under which Ordinance No. 10231 would be valid, Plaintiff has not demonstrated a likelihood of success on his claim that said ordinance, on its face, is unconstitutional.

## C.    Irreparable Harm

This factor requires a party seeking preliminary injunctive relief to "show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Util. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. . . . Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the [petitioner]'s business." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986).

Plaintiff argues that Magistrate Judge Brisbois erred when he found that Plaintiff would not suffer irreparable harm if the requested injunctive relief was not granted, because at most, Plaintiff would be subject to a civil fine.  Plaintiff does not contest the Magistrate Judge's findings that the ordinance does not subject him to a criminal fine, only a possible civil fine, and that he could continue business operations even if he did not apply for a license.  Instead, Plaintiff argues that these findings ignore the basic constitutional issue in this case - that the government may not impose financial penalties upon an individual by virtue of his exercise of his rights under the Fifth Amendment.  In

support, Plaintiff refers to Lefkowitz v. Turley, 414 U.S. 70 (1973) and Lefkowitz v. Cunningham, 431 U.S. 801 (1977).

Both the Turley and Cunningham decisions have no application to Plaintiff's facial challenge to Ordinance No. 10231. At issue in Turley was a state statute that precluded the award of a government contract to any person who failed to waive immunity or to answer questions when called to testify concerning that person's contract with the state. 414 U.S. at 71-74. Similarly, at issue in Cunningham was a state statute that allowed an officer of a political party to be removed from office and barred for five years from holding any party or public office, because he refused to waive his constitutional privilege against self-incrimination. 431 U.S. at 802; see also United States v. Musk, __ F.3d __, 2013 WL 3333086 at *4 (8th Cir. Jul. 2, 2013) (referring to Turley and progeny as "penalty" cases where the state not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions capable of forcing self-incrimination). Ordinance No. 10231 includes no language compelling a person who seeks a license thereunder to appear or testify in any proceeding, nor does it impose any sanction capable of forcing self-incrimination. Accordingly,

Magistrate Judge Brisbois did not err in finding that Turley and progeny are inapposite to Plaintiff's facial challenge.

Because Plaintiff has failed to demonstrate a likelihood of success on the merits of his facial challenge to Ordinance No. 10231, the Court finds that Plaintiff will not be irreparably harmed if the requested injunction is not granted.

Accordingly, the Court adopts the Report and Recommendation dated July 15, 2013.

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order [Doc. No. 4] is **DENIED.**

Date: July 18, 2013

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court
